**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **ELI LILLY AND COMPANY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-00347-MJT |
| | § | |
| **LEGENDARY PEPTIDES, LLC,** | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT LEGENDARY PEPTIDES, LLC'S MOTION TO DISMISS COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF THE ISSUES TO BE DECIDED .......... 3

III. SUMMARY OF ALLEGATIONS .......... 3

- A. Lilly's approved medicines are made from different molecules, and no one may sell retatrutide for personal use. .......... 3
- B. Lilly describes a crowded unlawful market in which Legendary is one alleged participant. .......... 4
- C. Claims comparing retatrutide with other molecules come from other sellers and anonymous Reddit users. .......... 5
- D. Lilly's allegations about Legendary's marketing say nothing about Lilly, its medicines, or weight loss. .......... 5
- E. Lilly pleads three theories of injury, none of which are tied to a Legendary customer. .......... 7
- F. Lilly asserts eight state-law claims. .......... 8

IV. LEGAL STANDARD .......... 8

V. ARGUMENT .......... 9

- A. Lilly lacks Article III standing. .......... 9
  - 1. Lilly's diversion theory of injury is speculative, unsupported, and inconsistent with common sense. .......... 10
  - 2. Harm to a future product is neither actual nor imminent. .......... 12
  - 3. Lilly's reputational theory rests on events that have not happened. .......... 13
- B. Lilly's state-law claims fail for lack of statutory standing. .......... 14
  - 1. Lilly's state-law claims require an injury proximately caused by Legendary. .......... 14
  - 2. Diversion from different products is not a proximately caused direct injury. .......... 16
  - 3. Goodwill for a product that does not exist is not an actual loss. .......... 19
- C. Texas common law does not recognize an unfair-competition claim built on a violation of the Texas Food, Drug, and Cosmetic Act. .......... 19

VI. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ....................16

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*,
287 Conn. 208, 947 A.2d 320 (2008) ....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................8

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*,
241 F.3d 696 (9th Cir. 2001) ....................16

*AstraZeneca Pharms. LP v. Becerra*,
719 F. Supp. 3d 377 (D. Del. 2024) ....................12

A*straZeneca Pharms. LP v. Sec'y U.S. Dep't of Health & Hum. Servs.*,
137 F.4th 116 (3d Cir. 2025) ....................12

*AstraZeneca Pharms. LP v. Kennedy*,
146 S. Ct. 2648 (2026) ....................13

*Barber v. Bryant*,
860 F.3d 345 (5th Cir. 2017) ....................14

*Bay Area Unitarian Universalist Church v. Ogg*,
185 F.4th 523 (5th Cir. 2026) (en banc) ....................14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................9

*Crane v. Johnson*,
783 F.3d 244 (5th Cir. 2015) ....................8, 11

*Cross v. Formativ Health Mgmt., Inc.*,
439 F. Supp. 3d 616 (E.D.N.C. 2020) ....................15

*Eli Lilly & Co. v. Adonis Health, Inc.*,
No. 25-cv-03536-JST, 2025 WL 2721684 (N.D. Cal. Sept. 24, 2025) ....................17

*Eli Lilly & Co. v. Empower Clinic Servs., LLC*,
No. H-25-3464, 2026 WL 1162765 (S.D. Tex. Apr. 29, 2026) ....................17, 18, 19

*Eli Lilly & Co. v. Mochi Health Corp.*,
No. 25-cv-03534-JSC, 2025 WL 2998166 (N.D. Cal. Oct. 24, 2025) ....................17

*Eli Lilly & Co. v. Mochi Health Corp.*,
No. 25-cv-03534-JSC, 2026 WL 1076831 (N.D. Cal. Apr. 20, 2026) ....................17

*Eli Lilly & Co. v. Revive Rx, LLC*,
812 F. Supp. 3d 708 (S.D. Tex. 2025) ....................17, 18, 19, 20

*Eli Lilly & Co. v. Willow Health Servs., Inc.*,
No. 2:25-cv-03570-AB-MAR, 2026 WL 639976 (C.D. Cal. Feb. 3, 2026) ....................... 16, 17

*Faulhaber v. Petzl Am., Inc.*,
656 F. Supp. 3d 1257 (D. Colo. 2023) .................................................................................. 14

*Fleming v. Janssen Pharms., Inc.*,
186 F. Supp. 3d 826 (W.D. Tenn. 2016) ........................................................................ 15, 19

*Ganim v. Smith & Wesson Corp.*,
258 Conn. 313 (2001) ............................................................................................................ 15

*Great Lakes Dredge & Dock Co. v. Magnus*,
128 F.4th 678 (5th Cir. 2025) ............................................................................................... 13

*Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*,
403 S.C. 623, 743 S.E.2d 808 (2013) .................................................................................... 15

*Jones v. Westbrook*,
379 P.3d 963 (Alaska 2016) .................................................................................................. 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ........................................................................................................ 16, 18

*Little v. KPMG LLP*,
575 F.3d 533 (5th Cir. 2009) ............................................................................................. 8, 10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .............................................................................................................. 13

*Montes v. SPARC Grp. LLC*,
6 Wash. 3d 321, 586 P.3d 999 (2026) ............................................................................ 16, 19

*Nat'l Infusion Ctr. Ass'n v. Becerra*,
116 F.4th 488 (5th Cir. 2024) ............................................................................................... 13

*Novo Nordisk Inc. v. Axtell's Rite-Value Pharmacy, Inc.*,
No. 4:25-cv-837-JDK, 2026 WL 1684178 (E.D. Tex. June 10, 2026) .................................. 12

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*,
974 F.2d 502 (4th Cir. 1992) .......................................................................................... 15, 19

*Patrick v. Wal-Mart, Inc.-Store No. 155*,
681 F.3d 614 (5th Cir. 2012) ................................................................................................... 8

*Perry v. Am. Tobacco Co.*,
324 F.3d 845 (6th Cir. 2003) ................................................................................................. 16

*Precision Links Inc. v. USA Prods. Grp., Inc.*,
No. 3:08-cv-576, 2009 WL 801781 (W.D.N.C. Mar. 25, 2009) ............................................ 19

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ............................................................................................... 8, 9

*Schoellkopf v. Pledger*,
778 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) ........................................................ 20

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ....................12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................8, 9, 14

*Taylor Publ'g Co. v. Jostens, Inc.*,
216 F.3d 465 (5th Cir. 2000) ....................19, 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................14

*United States ex rel. Univ. Loft Co. v. Avteq, Inc.*,
No. SA-14-CA-528-OLG, 2015 WL 13548950 (W.D. Tex. Dec. 22, 2015) ....................11

*United States ex rel. Univ. Loft Co. v. Avteq, Inc.*,
2016 WL 9461763 (W.D. Tex. Jan. 8, 2016) ....................11

*ViroPharma, Inc. v. Hamburg*,
777 F. Supp. 2d 140 (D.D.C. 2011), aff'd, No. 11-5143 (D.C. Cir. Mar. 21, 2012) ....................13

*Warren Tech., Inc. v. UL LLC*,
No. 1:18-CV-21019-UU, 2018 WL 10550927 (S.D. Fla. July 2, 2018) ....................11

*Wright v. Craft*,
372 S.C. 1, 640 S.E.2d 486 (Ct. App. 2006) ....................15

**Statutes**

Alaska Stat. § 45.50.531 ....................14

S.C. Code Ann. § 39-5-140 ....................15

Tex. Health & Safety Code Ann. § 431.114 ....................19

**Rules**

Fed. R. Civ. P. 12 ....................*passim*

Defendant Legendary Peptides, LLC ("Legendary") moves to dismiss the Complaint of Plaintiff Eli Lilly and Company ("Lilly"), ECF No. 1, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I. INTRODUCTION

Lilly does not sell retatrutide, and on its own allegations it cannot. Retatrutide is an investigational molecule that Lilly is still studying; Lilly "has not finished its clinical trials or submitted a final data package to FDA," and "FDA has not approved it." Compl. ¶ 4. Lilly's investigational new drug application "does not permit general commercial distribution or sale of the investigational drug to consumers." *Id.* ¶ 31. In Lilly's words: "Retatrutide cannot legally be sold for human use to anyone, anywhere, for any reason." *Id.* ¶ 1.

Lilly nonetheless filed a lawsuit challenging alleged sales of retatrutide as "unfair competition" because Legendary is "target[ing] the same consumer pool," presumably referring to consumers that desire to lose weight. Compl. ¶ 61. But if that makes Legendary Lilly's competitor, then so is every diet-supplement maker, and Lilly could sue each of them for lost sales. The law does not define markets at such a high conceptual level when considering whether a party has plausibly alleged harm for purposes of Article III or proximate causation, and the Court should reject Lilly's attempt to extend its litigation campaign beyond just those who sell compounded versions of its FDA-approved drugs—Mounjaro, Zepbound, and Foundayo—to any unrelated molecule that any consumer believes will assist with weight loss.

Most of the Complaint is not about Lilly at all. The Complaint describes FDA's drug-approval process; a "black market" of "online retailers, 'research use only' peptide suppliers like Legendary Peptides, and med spas"; FDA's warning letters to those sellers; and anonymous online accounts of consumers who suffered adverse events. Compl. ¶¶ 16–23, 33–41. Those are harms to consumers and to the regulatory system, which the regulators are already addressing. *Id.* ¶¶ 36–37. But Lilly cannot sue to vindicate consumers' injuries or FDA's authority and must plead an injury of its own. And the only injury Lilly pleads is "lost sales, damage to goodwill, harm to

Lilly's competitive position, and diversion of consumers." *Id.* ¶¶ 74, 82, 90, 98, 106, 114, 122, 131. That is the whole case: Lilly seeks damages for lost sales due to a product it does not and cannot lawfully sell.

Lilly's own allegations demonstrate why that injury is missing. Lilly's approved medicines—Mounjaro, Zepbound, and Foundayo—are made from tirzepatide and orforglipron, and Lilly does not allege that Legendary sells either molecule. Compl. ¶¶ 26–28. None of the Legendary statements the Complaint quotes mention Lilly, its medicines, its clinical trials, obesity, or weight loss. *See id.* ¶¶ 44–51. The "lower cost and perceived superior efficacy" claims that Lilly says are drawing consumers to retatrutide come, by Lilly's own account, from other sellers and anonymous Reddit users. *Id.* ¶ 37 n.14; *id.* ¶ 60 & nn.31–32. And Lilly's lone allegation that Legendary advertises its product "as superior to existing obesity-management products" identifies no such advertisement. *Id.* ¶ 61.

Because Lilly sells nothing Legendary is alleged to sell, none of Lilly's three theories of injury survive. The diversion theory—that consumers chose retatrutide over Mounjaro, Zepbound, or Foundayo—rests on two anonymous Reddit posts that do not mention Legendary, and Lilly does not allege that any Legendary customer qualified for, or would otherwise have been prescribed, a Lilly medicine. Compl. ¶¶ 6, 60–61 & nn.31–32. The "poisoning the well" theory requires consumers to buy a product labeled for research use, use it anyway, become ill, and blame the molecule—and then requires Lilly to finish its trials and obtain an FDA approval it has not yet sought. *Id.* ¶¶ 4, 7, 62–63. And the reputational theory depends on events that have not happened: "if" Legendary's customers experience adverse effects, Lilly predicts they may blame retatrutide or Lilly. *Id.* ¶ 64. None of these theories describe the concrete, traceable injury Article III requires, and none describe the actual, proximately caused loss each state statute requires. Count 7 fails for an additional reason: Texas does not recognize a common-law unfair-competition claim built on a violation of the Texas Food, Drug, and Cosmetic Act, as two courts have already held in Lilly's own cases. *See infra* Section V.C.

The Court should dismiss the Complaint.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1) Whether Lilly has Article III standing to sue over a product it concedes it does not sell and cannot lawfully sell, Compl. ¶¶ 1, 4, 31–32, where each theory of injury rests on a retatrutide market that does not exist, on adverse events that have not occurred, or on the independent choices of unidentified consumers, prescribers, and other sellers.

2) Whether, even if Lilly has Article III standing, Counts 1–6 and 8 fail because each state statute requires an actual loss proximately caused by the defendant's conduct, and Lilly pleads neither.

3) Whether Count 7 fails because Texas does not recognize a common-law unfair-competition claim predicated on an alleged violation of the Texas Food, Drug, and Cosmetic Act, as courts have already held in other cases brought by Lilly.

## III. SUMMARY OF ALLEGATIONS

The following allegations are taken from the Complaint and are accepted as true only for purposes of this motion.

### A. Lilly's approved medicines are made from different molecules, and no one may sell retatrutide for personal use.

Lilly describes itself as an international pharmaceutical manufacturer whose medicines "help more than 70 million patients across the globe." Compl. ¶ 24. Its FDA-approved obesity and diabetes medicines contain one of two molecules. Tirzepatide is the active ingredient in Mounjaro, which FDA approved to treat type 2 diabetes, and in Zepbound, which FDA approved for chronic weight management in adults with obesity, or overweight with at least one weight-related medical condition, and for obstructive sleep apnea in certain adults with obesity. *Id.* ¶¶ 25–26. Orforglipron is the active ingredient in Foundayo, a once-daily pill approved in April 2026 to treat obesity, or overweight with at least one weight-related comorbid condition. *Id.* ¶ 27. Lilly alleges that it is "the only lawful source of mass-produced tirzepatide products in the United States" and the only

company approved to sell orforglipron. *Id.* ¶ 28. Lilly does not allege that Legendary sells tirzepatide or orforglipron.

Retatrutide is a different molecule: a "triple hormone receptor agonist" that Lilly is still studying in Phase 3 trials. Compl. ¶ 29. Lilly holds an investigational new drug application for retatrutide, which "does not permit general commercial distribution or sale of the investigational drug to consumers." *Id.* ¶ 31. Lilly has not finished its trials or submitted a final data package to FDA, and no retatrutide medicine has been approved "by FDA or any other regulatory agency in the world." *Id.* ¶¶ 4, 32, 53. As Lilly puts it, "no drug containing retatrutide may be sold to consumers. Period." *Id.* ¶ 4. Lilly describes its own product as a "future retatrutide medicine, if approved." *Id.* ¶ 62.

### B. <u>Lilly describes a crowded unlawful market in which Legendary is one alleged participant.</u>

Lilly alleges that a "black market" for retatrutide has emerged, made up of "online retailers, 'research use only' peptide suppliers like Legendary Peptides, and med spas," whose products are "often sourced from unknown foreign suppliers and illegally imported." Compl. ¶¶ 33–34. Consumers in online forums discuss retatrutide "obtained from unregulated sources, including products sourced from Chinese manufacturers and suppliers." *Id.* ¶ 39. FDA has sent "at least 16 warning letters related to retatrutide," in addition to "more than 100 warning letters since September 2025 to entities marketing compounded GLP-1 receptor agonists." *Id.* ¶ 37; *see id.* ¶ 8. The warning-letter recipients the Complaint names are Gram Peptides, Prime Sciences, Lovega LLC d/b/a Pink Pony Peptides, and PekCura Labs. *Id.* ¶ 37 nn.14–15. Lilly does not allege that FDA has sent a warning letter to Legendary.

Legendary is a Texas limited liability company. Compl. ¶ 11. It sells peptides through its website and describes itself as a "Texas-based supplier of third-party tested compounds for research use only." *Id.* Lilly alleges that one of Legendary's products, labeled "GLP3 (R)," is

retatrutide, *id.* ¶ 44, and that Legendary markets it for human use notwithstanding its research-use-only designation, *id.* ¶¶ 43–45. This motion does not ask the Court to resolve that allegation.

### C. <u>Claims comparing retatrutide with other molecules come from other sellers and anonymous Reddit users.</u>

Lilly's theory of diversion is that "[s]ome consumers who meet the criteria for obesity-management medications are choosing illegal retatrutide over Lilly's FDA-approved obesity-management medicines, citing illegal sellers' claims of lower cost and perceived superior efficacy as the primary drivers." Compl. ¶ 60. The only efficacy claims by any seller that the Complaint quotes come from other companies. According to Lilly, FDA sent warning letters to Gram Peptides for promoting retatrutide for "appetite suppression, insulin sensitivity, thermogenesis, and fat-oxidation"; to Prime Sciences for claiming that "[r]etatrutide has shown higher weight loss results in clinical trials, with an average of up to 28% body weight reduction"; and to Pink Pony Peptides for promising "three times the fat-fighting horsepower" and "jaw-dropping results." *Id.* ¶ 37 n.14. Per Lilly's own allegations, then, consumers purchasing retatrutide because of improved efficacy claims are buying their retatrutide from other sellers, not Legendary.

The only statement comparing the cost of Lilly's products and any retatrutide in the Complaint comes from an anonymous Reddit user, who reported that "10×20mg of retatrutide was about half the cost of a single 7.5mg Mounjaro pen." Compl. ¶ 60 & n.31. A second anonymous user, who had lost 169 pounds on tirzepatide, asked whether "switching over to reta" would help. *Id.* ¶ 60 & n.32. Lilly does not allege that either user bought from, or even mentioned, Legendary.

### D. <u>Lilly's allegations about Legendary's marketing say nothing about Lilly, its medicines, or weight loss.</u>

Lilly devotes ten paragraphs to Legendary's conduct. Compl. ¶¶ 42–51. None of the statements it attributes to Legendary mention Lilly, Mounjaro, Zepbound, Foundayo, tirzepatide, Lilly's clinical trials, obesity, or weight loss. Legendary's product page "simply refers to" the product as "GLP3 (R)," and the label Lilly reproduces reads "GLP3 (R)," "15 MG," "Research

Use Only," and "Lyophilized Powder." *Id.* ¶ 44. One since-deleted Facebook video concerns a different product, NAD+. *Id.* ¶ 46. Another since-deleted Facebook post, published on New Year's Eve, urges followers to "[i]nvest in tools that support your efforts behind the scenes while you show up, do the work, and stay disciplined," under the hashtags "#fitness" and "#healthylifestyle"; it names no product. *Id.* ¶ 48. And Legendary states that its products are "produced in ISO-accredited, cGMP-compliant laboratories and verified by independent third-party testing facilities in the United States." *Id.* ¶ 51. Lilly characterizes a TikTok video as marketing "retatrutide kits" to consumers, but it quotes nothing said in the video. *Id.* ¶ 47. The first comment calls the offering a "rip off" and says the viewer "will stay over the pond"; another asks, "lol what are these prices." *Id.*

The two customer reviews Lilly quotes praise Legendary's website, shipping, customer service, and product purity. One reports that "the website is very simple and easy to follow," that "the shipment is fantastic," and that Legendary "uses a third party company to make sure their products are 99% pure"; its photo shows three vials, one labeled "GLP3 (R)." Compl. ¶ 49. The other praises "the customer service, the timeliness of deliveries, and the quality of the peptides," and says, "My results have exceeded my expectations!" *Id.* ¶ 50. Neither mentions weight loss, obesity, or any Lilly product.

Lilly nonetheless alleges, in conclusory fashion, that Legendary relies on "Lilly's studies," presents its products "as superior to approved medicines treating obesity," and "trades on the reputation and clinical data associated with Lilly's products." Compl. ¶¶ 6, 64. It also alleges that Legendary's "advertising of its purported retatrutide products as superior to existing obesity-management products stands to exacerbate" diversion. *Id.* ¶ 61. The Complaint does not identify a single advertisement or statement by Legendary that makes any such comparison or refers to Lilly's data.

### E. **Lilly pleads three theories of injury, none of which are tied to a Legendary customer.**

*Diversion from different products.* Lilly alleges that "[s]cores of people seeking obesity-management treatment have been persuaded to purchase Legendary Peptides' products, as evidenced by consumer testimonials." Compl. ¶ 61. The only testimonials the Complaint quotes are the two reviews described above, which do not mention weight loss or obesity. *Id.* ¶¶ 49–50. Lilly does not identify any Legendary customer who used, qualified for, or would otherwise have been prescribed a Lilly medicine.

*"Poisoning the well" for a future product.* Lilly alleges that, because no retatrutide medicine is lawfully available, consumers who suffer adverse events from black-market retatrutide will associate them with the molecule, so that "[b]y the time Lilly brings its FDA-approved retatrutide product to market," the public will have been "conditioned" against it. Compl. ¶¶ 7, 62–63. Every adverse-event report Lilly cites is an anonymous online post about a product obtained from "unregulated sources," and none are alleged to involve a Legendary product. *Id.* ¶¶ 39–41 & nn.17–18; *id.* ¶ 62 n.33.

*Reputation.* Lilly alleges, "[o]n information and belief," that "if consumers experience adverse effects from Legendary Peptides' illegal products, they are likely to attribute those harms to retatrutide or to Lilly." Compl. ¶ 64. Lilly does not identify any Legendary customer who has experienced an adverse event from Legendary's products, or anyone who attributed such an event to Lilly.

Each count then closes with the same sentence: Lilly "has been injured by Legendary Peptides' unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products." Compl. ¶¶ 74, 82, 90, 98, 106, 114, 122, 131.

### F. Lilly asserts eight state-law claims.

Lilly invokes diversity jurisdiction and asserts no federal claim. Compl. ¶ 13. Each count alleges that Legendary's sales violated a state "new drug" statute and that the violation is actionable under a state unfair-trade-practices statute (Counts 1–6 and 8) or Texas common law (Count 7). *Id.* ¶¶ 68–132. Lilly seeks a declaratory judgment, a permanent injunction against selling any product "containing or purporting to contain retatrutide," damages, disgorgement of Legendary's profits, and attorneys' fees. *Id.*, Prayer for Relief ¶¶ 1–2, 4, 6.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge subject-matter jurisdiction, including for lack of Article III standing. *See Crane v. Johnson*, 783 F.3d 244, 250–51 (5th Cir. 2015). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* At the pleading stage, "the plaintiff must clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation and internal quotation marks omitted). Although courts construe allegations of injury liberally, "allegations of injury that is merely conjectural or hypothetical do not suffice to confer standing." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

To survive a Rule 12(b)(6) challenge, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To plead facial plausibility, a plaintiff must set forth factual content that permits the courts to draw the reasonable inference that the defendant is liable." *Patrick v. Wal-Mart, Inc.-Store No. 155*, 681 F.3d 614, 622 (5th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## V. ARGUMENT

Every count rests on the same faulty premise: that Lilly has been injured by the alleged sale of a product it does not and cannot lawfully sell. That premise fails for several independent reasons. First, Lilly's allegations fail to establish Article III standing because none of Lilly's three theories of injury are concrete, actual or imminent, and traceable to Legendary. Second, the allegations fail on the merits because each state-law cause of action Lilly invokes requires the plaintiff's own economic loss caused by the defendant. Third, Lilly's claim brought under Texas common law fails because Texas does not recognize a common-law unfair-competition claim built on a violation of the Texas Food, Drug, and Cosmetic Act. Because the Article III defect is jurisdictional, the Court should address it first. *Ramming*, 281 F.3d at 161. But even if Lilly cleared Article III's threshold, its claims would independently fail on the merits.

### A. Lilly lacks Article III standing.

To establish Article III standing, Lilly must plead an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). A "concrete injury . . . must actually exist." *Spokeo*, 578 U.S. at 340 (citation omitted). A "threatened injury must be certainly impending to constitute injury in fact," and a theory that "relies on a highly attenuated chain of possibilities" does not qualify. *Clapper*, 568 U.S. at 409–10 (citation and internal quotation marks omitted). The Complaint pleads three theories of injury. First, Lilly alleges that it lost sales of *other* drugs to consumers who bought GLP3 (R) instead. Compl. ¶¶ 6, 60–61. Second, Lilly alleges harm to a product market that does not yet exist. *Id.* ¶¶ 7, 62–63. And third, Lilly alleges reputational harm, pleaded on information and belief, that turns on how consumers might react *if* they suffer adverse events from GLP3 (R), a product that is "definitionally, not for human use." *Id.* ¶¶ 5, 64. None is a cognizable Article III injury.

### 1. <u>**Lilly's diversion theory of injury is speculative, unsupported, and inconsistent with common sense.**</u>

Lilly's lead theory is that some consumers who might have been prescribed Mounjaro, Zepbound, or Foundayo bought GLP3 (R) from Legendary's website instead. Compl. ¶¶ 6, 60–61. That theory is too speculative to plead an injury traceable to Legendary. "A claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court." *Little*, 575 F.3d at 540. In *Little*, competitors alleged they lost business they would have otherwise received because of KPMG's unlawful participation in the public-accountancy market. *Id.* at 535. The Fifth Circuit held that the competitors' "claim of injury depends on several layers of decisions by third parties[,]" specifically whether KPMG's clients would have taken their business to the plaintiffs, followed their accountants to another firm, or whether, facing such a crisis, KPMG would have quickly remedied the licensure issue. *Id.* at 540–41. The claim that KPMG clients would have hired its competitors if KPMG's licensure had been revoked was thus held "too speculative to confer Article III standing," and the Fifth Circuit affirmed dismissal under Rule 12(b)(1). *Id.* at 541.

Lilly's claims require more layers of speculation than those in *Little*. *See Little*, 575 F.3d at 541 (holding plaintiffs' claim of injury too speculative when it depended on a chain of third-party decisions, including whether defendant's clients would have replaced defendant with the plaintiffs). For a Legendary sale of GLP3 (R) to cost Lilly a sale of one of its FDA-approved weight-loss drugs, a consumer must visit Legendary's website, purchase a product labeled "research use only," and nevertheless consume the product in the hope of losing weight. Moreover, for this to cause a lost sale to Lilly, it must be true that the customer (1) otherwise qualified for one of Lilly's medicines, each of which FDA approved only for specified conditions—type 2 diabetes, or obesity or overweight with at least one weight-related condition; (2) would have sought treatment from a doctor; and (3) would have received a prescription for one of Lilly's drugs rather than a compounded GLP-1 option. *See* Compl. ¶¶ 26–27, 60; *see also id.* ¶ 37 (alleging FDA has sent "more than 100 warning letters since September 2025 to entities marketing compounded

GLP-1 receptor agonists"). Even crediting Lilly's speculation that some Legendary customers act contrary to the product's labeling, Lilly pleads nothing to suggest that any Legendary customer who bought a "research use only" peptide to lose weight would otherwise have qualified for, and received, a prescription for a Lilly drug. Lilly alleges only that "[s]ome consumers who meet the criteria for obesity-management medications" are choosing retatrutide from unidentified "illegal sellers," *id.* ¶ 60, and that people "seeking obesity-management treatment" have bought Legendary's products, *id.* ¶ 61. Seeking treatment is not qualifying for it, and neither allegation ties a qualifying patient to Legendary. That is a layer of speculation not present in *Little*, where it was assumed that the competitor accountants could serve KPMG's clients: nothing in the Complaint indicates that any Legendary customer had the medical conditions required for a prescription for Lilly's medicines.

Indeed, Lilly pleads no facts connecting its speculation to Legendary. Its only examples of diversion are two unverified, anonymous Reddit posts, neither of which mentions Legendary. Compl. ¶ 60 & nn.31–32. Its allegation that "[s]cores of people . . . have been persuaded to purchase Legendary Peptides' products" says nothing about whether any of them would otherwise have qualified for or been prescribed a Lilly product. *Id.* ¶ 61. An economic injury "not supported by any facts" is "purely speculative." *Crane*, 783 F.3d at 252. Courts dismiss competitors' lost-sales theories that require speculative inferences to connect the plaintiff's injury to the defendant's conduct. *See, e.g., Warren Tech., Inc. v. UL LLC*, No. 1:18-CV-21019-UU, 2018 WL 10550927, at *6 (S.D. Fla. July 2, 2018) (dismissing plaintiff's complaint for lack of Article III standing when plaintiff failed to allege facts explaining how it would sell more of its product if defendant were not allowed to sell its product); *United States ex rel. Univ. Loft Co. v. Avteq, Inc.*, No. SA-14-CA-528-OLG, 2015 WL 13548950, at *9 (W.D. Tex. Dec. 22, 2015) (holding "plaintiff has failed to allege an injury in fact that resulted from defendants' [conduct] because plaintiff makes no allegation that any contract bid was lost"), *report and recommendation adopted*, 2016 WL 9461763 (W.D. Tex. Jan. 8, 2016); *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45

(1976) (finding no standing where "[s]peculative inferences are necessary to connect [Plaintiffs'] injury to the challenged actions of [Defendants]").

In short, Lilly pleads nothing suggesting that, but for Legendary, it would have made a single additional sale of its FDA-approved weight-loss drugs.

Decisions finding Article III standing for a branded manufacturer confirm the point, because in each the defendant sold the plaintiff's own drug. For example, in *Novo Nordisk Inc. v. Axtell's Rite-Value Pharmacy, Inc.*, the court rejected the defendant's standing arguments—that the defendant's customers were "not in the market for Novo's FDA-approved drugs" and that prescribers were "intervening factor[s]"—because Novo alleged that the defendant's "drugs are essentially copies of Novo Nordisk's semaglutide drugs" and Novo "is the only company selling FDA-approved semaglutide drugs." No. 4:25-cv-837-JDK, 2026 WL 1684178, at *3 (E.D. Tex. June 10, 2026). "Thus," the court reasoned, the defendant's sales "would and will have been made by Novo Nordisk." *Id.* That reasoning cannot reach an alleged seller of retatrutide, a molecule Lilly does not sell. Compl. ¶¶ 4, 31–32. And the Complaint pleads no comparable link between a GLP3 (R) purchase and a lost prescription for Mounjaro, Zepbound, or Foundayo. *See id.* ¶¶ 60–61.

**2. <u>Harm to a future product is neither actual nor imminent.</u>**

Lilly's "poisoning the well" theory asserts harm to the market for its "future retatrutide medicine, if approved." Compl. ¶¶ 7, 62–63. That market does not exist, and whether it ever will depends on trials Lilly has not finished, a data package it has not submitted, and an approval FDA has not granted. *Id.* ¶¶ 4, 32, 53. An injury that depends on that sequence is neither actual nor imminent. Courts have rejected similar theories from pharmaceutical manufacturers. Where a drugmaker's injury would arise only "if" it developed a new formulation, "if" FDA approved that new formulation, and "if" the drug remained eligible for a federal program, "[t]he fact that the word 'if' is required to describe" the alleged injury showed that it was "neither actual nor certainly impending." *AstraZeneca Pharms. LP v. Becerra*, 719 F. Supp. 3d 377, 388 (D. Del. 2024), *aff'd sub nom. AstraZeneca Pharms. LP v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 116

(3d Cir. 2025), *cert. denied sub nom. AstraZeneca Pharms. LP v. Kennedy*, 146 S. Ct. 2648 (2026); *ViroPharma, Inc. v. Hamburg*, 777 F. Supp. 2d 140, 145–46 (D.D.C. 2011), *aff'd*, No. 11-5143 (D.C. Cir. Mar. 21, 2012) (holding plaintiff did not have standing where theory depended on FDA's later approval of generic drug); *see also Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 499 (5th Cir. 2024) (stating that when a future regulatory approval is speculative "the standing analysis must proceed based on the status quo").

Lilly sells no retatrutide and cannot lawfully sell any. Compl. ¶¶ 31–32. Harm to a market Lilly may someday enter is harm "down the road"—not an Article III injury. *See Great Lakes Dredge & Dock Co. v. Magnus*, 128 F.4th 678, 682 (5th Cir. 2025) ("It is not enough to say that lifting a regulatory barrier may potentially allow more competition down the road."). Imminence, moreover, "has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Both conditions are met here. Lilly's injury arrives only "[b]y the time Lilly brings its FDA-approved retatrutide medicine to market," Compl. ¶ 7, and the steps between Lilly and that day—finishing its trials and submitting its data package—are Lilly's own. *Id.* ¶ 4.

### 3. <u>Lilly's reputational theory rests on events that have not happened.</u>

Lilly's reputational allegation is pleaded on information and belief and is conditional: "*if* consumers experience adverse effects from Legendary Peptides' illegal products, they are *likely* to attribute those harms to retatrutide or to Lilly." Compl. ¶ 64 (emphasis added). Lilly does not allege that any Legendary customer has experienced an adverse event, attributed it to Lilly, or declined a Lilly product as a result. Every adverse-event report it cites is anonymous, unverifiable, and untethered to Legendary. *Id.* ¶¶ 39–41 & nn.17–18, 62 n.33. And Lilly does not allege that its name appears on any Legendary product.

Lilly's theory therefore depends on two contingencies: an adverse event that has not occurred, and a consumer's decision to blame it on a company that does not make the product. An

injury built on a "speculative chain of possibilities" does not confer standing. *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017). And a claim of reputational harm "based on a few adverse customer reviews, utterly fails to bear a 'close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—namely, the reputational harm associated with the tort of defamation.'" *Bay Area Unitarian Universalist Church v. Ogg*, 185 F.4th 523, 536 (5th Cir. 2026) (en banc) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021)). Lilly's theory is weaker still because the reputation at stake belongs to a product that does not exist. Harm to the goodwill of a "future retatrutide medicine, if approved," Compl. ¶ 62, is not an injury that "actually exist[s]." *Spokeo*, 578 U.S. at 340.

**B. <u>Lilly's state-law claims fail for lack of statutory standing.</u>**

**1. <u>Lilly's state-law claims require an injury proximately caused by Legendary.</u>**

Even if Lilly's allegations clear Article III's threshold, Counts 1–6 and 8 fail under Rule 12(b)(6). Each statute Lilly invokes requires an actual loss proximately caused by the defendant's conduct, and most require a tangible loss of money or property:

*Alaska (Count 1)*. A private plaintiff seeking damages under the Alaska Unfair Trade Practices and Consumer Protection Act must plead "an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471." Alaska Stat. § 45.50.531(a); *see Jones v. Westbrook*, 379 P.3d 963, 970 (Alaska 2016) (finding plaintiff had not yet experienced an "ascertainable loss of money or property" when he had "suffered only the threat of future damage").

*Colorado (Count 2)*. "To set forth a plausible [Colorado Consumer Protection Act] claim, a plaintiff must allege . . . [t]he plaintiff suffered an injury to a legally protected interest; and . . . [t]he allegedly unfair or deceptive trade practice caused the injury." *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1266 (D. Colo. 2023) (citation omitted).

*Connecticut (Count 3)*. A claim for violation of the Connecticut Unfair Trade Practices Act ("CUTPA") requires "an ascertainable loss of money or property as a result of the defendant's acts or practices." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217, 947 A.2d 320, 329 (2008). "The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief . . . ." *Id.* at 217–18, 947 A.2d at 329–30 (internal quotation marks omitted). And a CUTPA plaintiff lacks standing when its injury is "remote, indirect or derivative." *Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 344, 780 A.2d 98, 118 (2001).

*North Carolina (Count 4)*. "In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which *proximately caused* injury to plaintiffs." *Cross v. Formativ Health Mgmt., Inc.*, 439 F. Supp. 3d 616, 623 (E.D.N.C. 2020) (emphasis added).

*South Carolina (Count 5)*. To recover under the South Carolina Unfair Trade Practices Act, the plaintiff must have "suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 638, 743 S.E.2d 808, 816 (2013) (quoting *Wright v. Craft*, 372 S.C. 1, 23, 640 S.E.2d 486, 498 (Ct. App. 2006)). South Carolina limits recovery to the plaintiff's own "actual damages," and a plaintiff "cannot piggyback on injuries suffered by others." *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992) (citing S.C. Code Ann. § 39-5-140(a)).

*Tennessee (Count 6)*. A claim under the Tennessee Consumer Protection Act ("TCPA") requires an "ascertainable loss . . . as a result of . . . an unfair or deceptive act or practice" that is "more than trivial or speculative." *Fleming v. Janssen Pharms., Inc.*, 186 F. Supp. 3d 826, 834 (W.D. Tenn. 2016) (citations omitted) (dismissing TCPA claim because economic damages alleged were "speculative").

*Washington (Count 8)*. A claim under the Washington Consumer Protection Act ("WCPA") requires injury to "business or property," which "must be an economic loss." *Montes v. SPARC Grp. LLC*, 6 Wash. 3d 321, 331, 338, 586 P.3d 999, 1005, 1008 (2026) (holding plaintiff

did not allege "a cognizable [W]CPA injury in her business or property because she [did] not allege an objective economic loss"). The WCPA also requires "a causal link between the unfair or deceptive act and the injury." *Id.* at 330.

### 2. **Diversion from different products is not a proximately caused direct injury.**

The diversion theory reaches Lilly, if at all, only through the choices of consumers, prescribers, and other sellers. *See supra* Section V.A.1. Whatever the Court makes of that chain for purposes of traceability, it defeats proximate cause. As the Supreme Court has explained, "[b]usinesses lose and gain customers for many reasons," and a plaintiff "cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459–60 (2006). "Proximate causation may be adequately alleged when 'there is likely to be something very close to a 1:1 relationship between' a plaintiff's lost sales and the sales diverted to a defendant." *Eli Lilly & Co. v. Willow Health Servs., Inc.*, No. 2:25-cv-03570-AB-MAR, 2026 WL 639976, at *7 (C.D. Cal. Feb. 3, 2026) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 139 (2014)).

The same direct-injury requirement governs each state statute Lilly invokes. *See supra* Section V.B.1; *see also Perry v. Am. Tobacco Co.*, 324 F.3d 845, 850–51 (6th Cir. 2003) (affirming dismissal of Tennessee Consumer Protection Act claim for lack of standing because plaintiffs could not establish proximate cause); *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 706 (9th Cir. 2001) (affirming dismissal of Washington Consumer Protection Act claim for lack of proximate cause).

Lilly cannot invoke a 1:1 relationship or come close to alleging that each sale Legendary makes is a sale Lilly would otherwise have made. Legendary is alleged to sell retatrutide, which Lilly does not sell and which, Lilly pleads, no one may lawfully sell for human use. Compl. ¶¶ 4, 31–32. No retatrutide sale by Legendary could have displaced a retatrutide sale by Lilly.

Lilly's cases against compounding pharmacies and telehealth providers do not suggest otherwise. In those cases, the defendants sold tirzepatide itself, and Lilly alleged that "sales made by [the defendant] of its compounded tirzepatide products would have been made by Lilly." *Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708, 728 (S.D. Tex. 2025) (quoting complaint); *Eli Lilly & Co. v. Empower Clinic Servs., LLC*, No. H-25-3464, 2026 WL 1162765, at *8 (S.D. Tex. Apr. 29, 2026) (same). Even on those facts, Lilly has lost at the pleading stage. In *Willow Health*, Lilly alleged that it and the defendant "compete for consumers seeking tirzepatide-based weight-loss treatments." 2026 WL 639976, at *3. The court nonetheless dismissed with prejudice, because Lilly pleaded no "1:1 relationship, or anything approaching it, between lost sales and sales diverted to Willow," and because "[t]he physician's prescribing decision, not Willow's advertisements, is the proximate cause of the patient using the compounded medication instead of Lilly's product." *Id.* at *7–8; *see also Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534-JSC, 2025 WL 2998166, at *3 (N.D. Cal. Oct. 24, 2025) (dismissing for lack of Article III standing where Lilly's claimed reputational injury from compounded tirzepatide rested on "this lone internet post by an unidentified individual").

When Lilly's claims have survived, it is because the defendant sold the same molecule to the same consumers. In *Adonis Health*, the court sustained Lilly's Lanham Act standing because the defendant and Lilly both "market and sell tirzepatide-containing drugs . . . to the same potential customers," and Lilly alleged a market for "tirzepatide-containing medications used for weight loss, a significantly narrower segment of the market." *Eli Lilly & Co. v. Adonis Health, Inc.*, No. 25-cv-03536-JST, 2025 WL 2721684, at *3–4 (N.D. Cal. Sept. 24, 2025). On Lilly's amended complaint in *Mochi*, the court likewise found proximate cause because the parties' tirzepatide products "can be sold side-by-side to the same consumer base," and it declined to follow *Willow Health*'s prescriber reasoning in part because, "[s]ince both products at issue contain tirzepatide, it is a reasonable inference that a consumer would have some basis for asking her physician to prescribe a specific medication." *Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534-JSC, 2026 WL 1076831, at *11, *12 n.3 (N.D. Cal. Apr. 20, 2026). Neither rationale reaches this case.

Lilly sells no retatrutide, Compl. ¶¶ 4, 31–32, and none of the statements Lilly attributes to Legendary mention Lilly or its medicines, *see id.* ¶¶ 42–51. A consumer cannot ask her physician for a Lilly retatrutide medicine that does not exist.

The state statutory counts in *Revive* and *Empower* survived challenges based on preemption, statutory exemptions, and statutory scope; neither court addressed whether Lilly's lost-sales theory satisfied the statutes' causation requirements. *See Revive*, 812 F. Supp. 3d at 751; *Empower*, 2026 WL 1162765, at *19. And when the *Empower* court tested Lilly's lost-sales theory against *Lexmark*, it found no "1:1 relationship—or anything approaching it—between Empower's sales of tirzepatide medications and Lilly's lost sales." *Id.* at *8. If sales of Lilly's own molecule could not supply that relationship, sales of a molecule Lilly does not sell cannot.

Nor does Lilly plead a direct injury to sales of its other medicines. Lilly alleges that Legendary's products compete with Mounjaro, Zepbound, and Foundayo because they "target the same consumer pool." Compl. ¶ 61. But Lilly also alleges that Legendary is one seller in a "dangerous and growing black market," that FDA has sent at least sixteen warning letters related to retatrutide, and that consumers who choose retatrutide point to "illegal sellers' claims of lower cost and perceived superior efficacy." *Id.* ¶¶ 8, 60; *see id.* ¶¶ 36–37. Yet Legendary makes no such claims, so if consumers are attracted by "illegal sellers' claims of lower cost and perceived superior efficacy[,]" they are attracted to third parties, not Legendary.

Nothing in the Complaint ties a lost Lilly sale to Legendary rather than to those other sellers and the choices of individual consumers. The two Reddit posts Lilly quotes do not mention Legendary. Compl. ¶ 60 & nn.31–32. And the allegation that "[s]cores of people" bought Legendary's products does not say that any of them used, or would otherwise have used, a Lilly medicine. *Id.* ¶ 61. The allegations that Legendary's sales "are costing Lilly sales" and that Lilly suffered "lost sales" are conclusory. *Id.* ¶¶ 61, 74, 82, 90, 98, 106, 114, 131.

Finally, Lilly's own pleading confirms that the people directly affected by Legendary's sales are Legendary's customers, not Lilly. Lilly alleges that consumers are "diver[ted] . . . to unapproved and potentially unsafe products," Compl. ¶ 114, and that consumers who buy them

"are harmed," *id.* ¶ 59. But a plaintiff "cannot piggyback on injuries suffered by others" in bringing a consumer-protection claim. *Omni*, 974 F.2d at 507.

### 3. <u>**Goodwill for a product that does not exist is not an actual loss.**</u>

Lilly's "poisoning the well" and reputational theories seek compensation for lost goodwill in a product Lilly has never sold—an injury too remote to establish proximate causation. *See supra* Section V.A.2–3. A federal court in North Carolina dismissed a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") on this ground, holding that the threat of future harm to goodwill does not establish actual injury. *See Precision Links Inc. v. USA Prods. Grp., Inc.*, No. 3:08-cv-576, 2009 WL 801781, at *3 (W.D.N.C. Mar. 25, 2009). "[T]he Complaint alleges that *if* the accused product malfunctions, the Plaintiff's goodwill will be tarnished and the Plaintiff *may* be exposed to product liability litigation. Such speculative allegations of possible harm in the future are simply insufficient to establish the actual injury necessary to support a claim under the UDTPA." *Id.* (emphasis in original); *see also Fleming*, 186 F. Supp. 3d at 834 (granting motion to dismiss Tennessee Consumer Protection Act claim because there was nothing in the record indicating plaintiff's economic damages); *Montes*, 6 Wash. 3d at 337 ("[D]isappointment is not a cognizable [W]CPA injury."). Lilly cannot recover for lost goodwill in a product it has never sold from incidents it only speculates could happen.

## C. <u>**Texas common law does not recognize an unfair-competition claim built on a violation of the Texas Food, Drug, and Cosmetic Act.**</u>

Count 7 alleges that Legendary's sale of unapproved new drugs in violation of the Texas Food, Drug, and Cosmetic Act ("Texas FDCA") "constitutes common law unfair competition under Texas law." Compl. ¶ 121; *see* Tex. Health & Safety Code Ann. § 431.114(a). Two Texas federal courts have rejected the same claim in Lilly's own cases. *See Revive*, 812 F. Supp. 3d at 729; *Empower*, 2026 WL 1162765, at *14. The same result follows here.

Texas unfair competition requires an illegal act that is "at least . . . an independent tort." *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). "Without some finding of

an independent substantive tort or other illegal conduct . . . liability cannot be premised on the tort of 'unfair competition.'" *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied). A plaintiff can state a common-law unfair-competition claim based on the violation of a state statute if (1) the Legislature intended the statute to supply a cause of action or standard of care for a civil-tort claim; and (2) the plaintiff belongs to the class of persons the statute was designed to protect and suffered the type of injury the statute was designed to prevent. *Revive*, 812 F. Supp. 3d at 726. Both prongs fail here. First, the Texas FDCA is "a comprehensive regulatory scheme" enforced by public officials through "a sliding scale of remedies," and that structure "forecloses private enforcement through common-law unfair-competition torts." *Id.* at 726–27. Second, the statute protects "patients from unsafe and ineffective drugs," so Lilly "does not belong to the class of persons the statute was designed to protect." *Id.* at 728.

Finally, Count 7 fails for the independent reason that the tort requires an illegal act that "interfered with the plaintiff's ability to conduct its business," *Taylor*, 216 F.3d at 486, and Lilly pleads no such interference. Count 7 should be dismissed with prejudice.

## VI. <u>CONCLUSION</u>

For these reasons, Legendary respectfully requests that the Court dismiss the Complaint in its entirety under Rule 12(b)(1) for lack of Article III standing. If the Court concludes that Lilly has standing, it should dismiss with prejudice Counts 1–6 and 8 under Rule 12(b)(6) because Lilly has not plausibly alleged an actual loss proximately caused by Legendary's conduct, and dismiss Count 7 with prejudice because the alleged violation of the Texas Food, Drug, and Cosmetic Act cannot support Lilly's common-law unfair-competition claim.

*[Signature on Following Page]*

Dated: October 2, 2026

/s/ *Matthew Venezia*______________
Matthew Venezia
CA Bar No. 313812
WATSTEIN TEREPKA LLP
999 N. Pacific Coast Highway, Suite 525
El Segundo, California 90245
Telephone: (213) 753-1337
Facsimile: (404) 537-1650
mvenezia@wtlaw.com

*Counsel for Defendant*
*Legendary Peptides, LLC*

**CERTIFICATE OF SERVICE**

I certify that on October 2, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, which will serve all counsel of record who have consented to electronic service.

/s/ *Matthew Venezia*________

Matthew Venezia