**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **ELI LILLY AND COMPANY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:26-cv-00347-MJT |
| | § | |
| **LEGENDARY PEPTIDES, LLC,** | § | |
| | § | |
| Defendant. | § | |
| | § | |

**DEFENDANT LEGENDARY PEPTIDES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Lilly has not pleaded an Article III injury traceable to Legendary. .......... 1

1. Lilly ties no lost sale to Legendary. .......... 2

2. Lilly ties no adverse event to a Legendary product or customer. .......... 5

3. Lilly ties no reputational harm to Legendary. .......... 6

B. Lilly does not plead a loss proximately caused by Legendary. .......... 8

C. Texas does not recognize Lilly's common-law claim. .......... 9

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## Cases

*Am. Home Prods. Corp. v. Johnson & Johnson*,
436 F. Supp. 785 (S.D.N.Y. 1977) ........ 3

*Andrx Pharms., Inc. v. Biovail Corp. Int'l*,
256 F.3d 799 (D.C. Cir. 2001) ........ 6

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ........ 8, 9

*Carlin v. Davidson Fink LLP*,
852 F.3d 207 (2d Cir. 2017) ........ 3

*Diascience Corp. v. Blue Nile, Inc.*,
No. 08 Civ. 9751 (NRB), 2009 WL 1938970 (S.D.N.Y. July 7, 2009) ........ 3

*Eli Lilly & Co. v. Adonis Health, Inc.*,
No. 25-cv-03536-JST, 2025 WL 2721684 (N.D. Cal. Sept. 24, 2025) ........ 4

*Eli Lilly & Co. v. AP Max Inc. d/b/a Southend Pharmacy*,
No. 4:25-cv-05051 (S.D. Tex. Apr. 17, 2026), ECF No. 47 ........ 10

*Eli Lilly & Co. v. Empower Clinic Servs., LLC*,
No. H-25-3464, 2026 WL 1162765 (S.D. Tex. Apr. 29, 2026) ........ 5, 7, 9, 10

*Eli Lilly & Co. v. Mochi Health Corp.*,
No. 25-cv-03534-JSC, 2026 WL 1076831 (N.D. Cal. Apr. 20, 2026) ........ 3, 4, 7

*Eli Lilly & Co. v. Revive Rx, LLC*,
812 F. Supp. 3d 708 (S.D. Tex. 2025) ........ 9, 10

*Eli Lilly & Co. v. Willow Health Servs., Inc.*,
No. 2:25-cv-03570-AB-MAR, 2025 WL 2631620 (C.D. Cal. Aug. 29, 2025) ........ 4, 5

*Eli Lilly & Co. v. Willow Health Servs., Inc.*,
No. 2:25-cv-03570-AB-MAR, 2026 WL 639976 (C.D. Cal. Feb. 3, 2026), *appeal docketed*,
No. 26-1317 (9th Cir. Mar. 5, 2026) ........ 5

*Energy Coal S.P.A. v. CITGO Petroleum Corp.*,
836 F.3d 457 (5th Cir. 2016) ........ 6

*Ganim v. Smith & Wesson Corp.*,
780 A.2d 98 (Conn. 2001) ........ 8, 9

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
634 F.3d 787 (5th Cir. 2011) ........ 3

*Hinchliffe v. Am. Motors Corp.*,
440 A.2d 810 (Conn. 1981) ........ 9

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
892 F.3d 719 (5th Cir. 2018) ........ 7

*Johnson & Johnson v. Carter-Wallace, Inc.*,
631 F.2d 186 (2d Cir. 1980) ....................................................................................3

*Jones v. Westbrook*,
379 P.3d 963 (Alaska 2016) ....................................................................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ....................................................................................8, 9

*Little v. KPMG LLP*,
575 F.3d 533 (5th Cir. 2009) ....................................................................................2

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................................................................................1, 3, 6

*Meese v. Keene*,
481 U.S. 465 (1987) ....................................................................................7

*Montes v. SPARC Grp. LLC*,
586 P.3d 999 (Wash. 2026) ....................................................................................9

*Novo Nordisk Inc. v. Axtell's Rite-Value Pharmacy, Inc.*,
No. 4:25-cv-837-JDK, 2026 WL 1684178 (E.D. Tex. June 10, 2026) ....................4, 7

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*,
974 F.2d 502 (4th Cir. 1992) ....................................................................................9

*Perry v. Am. Tobacco Co.*,
324 F.3d 845 (6th Cir. 2003) ....................................................................................9

*Reeder v. Daniel*,
61 S.W.3d 359 (Tex. 2001) ....................................................................................10

*Reliable Ambulance Serv., Inc. v. Mercy Hosp. of Laredo*,
No. 04-02-00188-CV, 2003 WL 21972724 (Tex. App.—San Antonio Aug. 20, 2003, pet. denied) (mem. op.) ....................................................................................10

*Sensory Path Inc. v. Fit & Fun Playscapes, LLC*,
No. 3:19-CV-219-GHD-RP, 2021 WL 4768247 (N.D. Miss. Oct. 12, 2021) ....................3

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................................................................................1

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................................................................................2, 8

*United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*,
744 F. Supp. 3d 676 (E.D. Tex. 2024) ....................................................................................6

*Upjohn Co. v. Riahom Corp.*,
641 F. Supp. 1209 (D. Del. 1986) ....................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................10

Fed. R. Civ. P. 12(b)(6) ....................................................................................10

**Other Authorities**

*Q3 2025 Eli Lilly and Co Earnings Call Transcript*,
GuruFocus.com (Oct. 30, 2025), 2025 WLNR 28379949 ..........................................................5

Defendant Legendary Peptides, LLC ("Legendary") submits this reply in support of its Motion to Dismiss (ECF No. 12, "Mot.") and in response to the Opposition of Plaintiff Eli Lilly and Company ("Lilly") (ECF No. 20, "Opp.").

## I. INTRODUCTION

Lilly seeks damages from Legendary on a Complaint that says almost nothing about Legendary. Stripped of its conclusory allegations, the Complaint alleges only that Legendary (1) maintains an age-restricted website that offers products labeled "research use only"; (2) posted a motivational New Year's message on its Facebook page that did not mention retatrutide (or any weight-loss drug); (3) claims that its products are produced in accredited laboratories and tested; and (4) received two complimentary Google reviews discussing customer service and product quality. Compl. ¶¶ 42–51. Everything else in the Complaint relates to two posts by one of Legendary's owners or the conduct of third parties.

Indeed, Lilly does not allege that Legendary ever mentioned Lilly, and it identifies no lost sale, adverse event, or reputational harm traceable to Legendary. The Complaint simply contains conclusions about a "dangerous and growing black market" and what "sellers like Legendary Peptides" will have done by the time Lilly's own retatrutide reaches market. *Id.* ¶¶ 7–8, 62–63. The Opposition repeats those conclusions, but even "general factual allegations" must describe an injury "fairly . . . trace[able] to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in original) (citation omitted). If it is enough to allege that a seller reaches "the same potential customers," Compl. ¶ 61, Lilly may sue anyone it accuses of selling an unlawful weight-loss product, and so may every drug company with a weight-loss drug under development. The Court should dismiss the Complaint.

## II. ARGUMENT

### A. Lilly has not pleaded an Article III injury traceable to Legendary.

Lilly must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks and citation omitted). And it must do so "for each claim that [it] press[es] and for each form of relief that [it] seek[s]." *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Nothing in the Opposition changes the Complaint's failure to allege an injury traceable to Legendary.

**1. <u>Lilly ties no lost sale to Legendary.</u>**

The Opposition says the Complaint "explicitly alleges that Legendary's customers would otherwise turn to Lilly's lawful medicines," Opp. 10 (citing Compl. ¶¶ 60–61), but it does not. Paragraph 60 quotes two anonymous Reddit users, neither alleged to be a Legendary customer, comparing retatrutide with tirzepatide. Compl. ¶ 60 & nn.31–32. Paragraph 61 asserts that "[s]cores of people seeking obesity-management treatment have been persuaded to purchase Legendary Peptides' products, as evidenced by consumer testimonials." *Id.* ¶ 61. But the Complaint's only testimonials discuss Legendary's website, shipping, customer service, and purity, and do not mention weight loss, obesity, or a Lilly medicine, *id.* ¶¶ 49–50. Nor does Lilly identify any "advertising" of Legendary's products "as superior to existing obesity-management products." *Id.* ¶ 61. The Opposition cites only a New Year's post that does not mention any product. Opp. 5, 10; Compl. ¶ 48.

The Opposition substitutes argument for allegations, reasoning that because retatrutide and tirzepatide share two hormone receptor targets, "[t]here is nothing speculative about the conclusion that a retatrutide purchaser would turn to MOUNJARO® or ZEPBOUND®." Opp. 10. That reasoning skips the steps the Motion identified—that a Legendary customer has a condition for which a Lilly medicine is approved, would have seen a prescriber, and would have been prescribed a Lilly medicine rather than another manufacturer's approved medicine or one of the compounded alternatives the Complaint itself describes. Mot. 10–11; Compl. ¶¶ 26–27, 37. And a claim that "depends on several layers of decisions by third parties" is "too speculative to confer Article III standing." *Little v. KPMG LLP*, 575 F.3d 533, 540–41 (5th Cir. 2009). The Opposition lengthens that chain: because "[n]o prescriber stands between Legendary and its customers," Opp. 15, a Legendary customer could buy a Lilly medicine, *id.* at 15 n.2, only by seeing a prescriber, meeting "the criteria for obesity-management medications," Compl. ¶ 60, and obtaining a prescription for

a different molecule. *Mochi* reasoned in part that a prescriber did not break the chain because a patient could ask for one tirzepatide product over another, since "both products at issue contain tirzepatide." *Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534-JSC, 2026 WL 1076831, at *12 n.3 (N.D. Cal. Apr. 20, 2026). Legendary's customers, on Lilly's account, do not ask a physician for anything, and retatrutide is not tirzepatide.

Nor does the Opposition answer the Motion's point that, on Lilly's own allegations, consumers are drawn to retatrutide by "illegal sellers' claims of lower cost and perceived superior efficacy," Compl. ¶ 60, which the Complaint attributes to other sellers, *id.* ¶ 37 n.14, and never to Legendary. *See* Mot. 5, 18. The Opposition recasts that point as an argument that other sellers' illegality immunizes Legendary. Opp. 11–12. But that is not the point. The conduct the Complaint says draws consumers from Lilly belongs to others, and a loss caused by what another seller or a Reddit thread said is "th[e] result [of] the independent action of some third party," not of Legendary's conduct. *Lujan*, 504 U.S. at 560 (alterations in original) (citation omitted). Lilly's cases rejected defendants' attempts to excuse their own violations by pointing to others, where the defendant's conduct was directed at the plaintiff and no one questioned causation. *See Carlin v. Davidson Fink LLP*, 852 F.3d 207, 217 (2d Cir. 2017); *Sensory Path Inc. v. Fit & Fun Playscapes, LLC*, No. 3:19-CV-219-GHD-RP, 2021 WL 4768247, at *5 (N.D. Miss. Oct. 12, 2021).

Every case Lilly cites for diverted sales involved a defendant that sold the plaintiff's own molecule or made misleading claims to win the plaintiff's customers. Even the cases Lilly cites to show that competing products need not be identical, Opp. 14, either involved a defendant that sold tirzepatide or rested on alleged misrepresentations that drew business from the plaintiff. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 (5th Cir. 2011); *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 188 (2d Cir. 1980); *Diascience Corp. v. Blue Nile, Inc.*, No. 08 Civ. 9751 (NRB), 2009 WL 1938970, at *1–3 (S.D.N.Y. July 7, 2009); *Am. Home Prods. Corp. v. Johnson & Johnson*, 436 F. Supp. 785, 787–90 (S.D.N.Y. 1977). Lilly brings no false-advertising claim, and no statement the Complaint attributes to Legendary mentions Lilly or claims a weight-loss benefit. Compl. ¶¶ 44–51.

The remaining cases found injury only because the defendant sold or marketed the same molecule. In *Axtell*, the court found standing because the defendant's "drugs are essentially copies of Novo Nordisk's semaglutide drugs" and Novo "is the only company selling FDA-approved semaglutide drugs"; "[t]hus," the defendant's sales "would and will have been made by Novo Nordisk." *Novo Nordisk Inc. v. Axtell's Rite-Value Pharmacy, Inc.*, No. 4:25-cv-837-JDK, 2026 WL 1684178, at *3 (E.D. Tex. June 10, 2026) (internal quotation marks and citations omitted). Lilly, which sells no retatrutide, cannot make that allegation. Compl. ¶¶ 4, 32. The Opposition says *Axtell* "turned on the harm to Novo, not the chemical composition of the products," Opp. 13, but the court's reasoning shows that the harm followed from the composition. Because the defendant's drugs were "essentially copies" of Novo's and Novo was the only approved seller, the court concluded—"[t]hus"—that the defendant's sales would have been Novo's. *Axtell*, 2026 WL 1684178, at *3. Without the same molecule, that inference fails. In *Adonis*, the court rejected the argument that "the weight-loss market is large and contains numerous competing products" because Lilly had pleaded a narrower market of "tirzepatide-containing medications used for weight loss." *Eli Lilly & Co. v. Adonis Health, Inc.*, No. 25-cv-03536-JST, 2025 WL 2721684, at *4 (N.D. Cal. Sept. 24, 2025). Here, Lilly pleads the broad market that *Adonis* set aside. Compl. ¶ 61. And in *Mochi*, the parties' tirzepatide medicines could be "sold side-by-side to the same consumer base," Mochi's ads were shown "to consumers searching for Lilly products," and it "directly compare[d]" its medications to Lilly's. *Mochi*, 2026 WL 1076831, at *11.

Lilly has lost this argument at the pleading stage against sellers of its own molecule, tirzepatide. The Opposition cites *Willow I* for the proposition that Lilly and Willow, a seller of compounded tirzepatide, were direct competitors, Opp. 14, without mentioning that the court dismissed Lilly's complaint for lack of statutory standing because Lilly "failed to plead a single lost sale" and did not allege "a single instance . . . where a consumer decided to select a compounded tirzepatide provided by Defendant instead of Plaintiff's products." *Eli Lilly & Co. v. Willow Health Servs., Inc.*, No. 2:25-cv-03570-AB-MAR, 2025 WL 2631620, at *4–5 (C.D. Cal. Aug. 29, 2025) ("*Willow I*"). And that competitive relationship rested on Willow's advertising that

its product had the "same active ingredient as MOUNJARO® and ZEPBOUND®." *Id.* at *4. But Lilly does not allege that Legendary compared its products to Lilly's. The court later dismissed Lilly's amended complaint with prejudice. *Eli Lilly & Co. v. Willow Health Servs., Inc.*, No. 2:25-cv-03570-AB-MAR, 2026 WL 639976, at *7–8 (C.D. Cal. Feb. 3, 2026) (holding that the amended complaint still did not "plead facts establishing a direct causal link between any advertisement by Willow and a patient choosing a compounded medication over Lilly's product"), *appeal docketed*, No. 26-1317 (9th Cir. Mar. 5, 2026). And in *Empower*, which the Opposition never mentions, the court dismissed Lilly's Lanham Act claim against a tirzepatide-compounding pharmacy because Lilly pleaded no "1:1 relationship—or anything approaching it" between a tirzepatide seller's sales and Lilly's lost sales, even though Lilly alleged that "[s]ome sales made by Empower . . . would have been made by Lilly." *Eli Lilly & Co. v. Empower Clinic Servs., LLC*, No. H-25-3464, 2026 WL 1162765, at *6, *8 (S.D. Tex. Apr. 29, 2026). If sellers of a Lilly molecule already on the market, one of them advertising by reference to Lilly's medicines, did not cause a traceable lost sale, a seller of a different, unapproved molecule that never mentions Lilly did not either.[1]

**2. <u>Lilly ties no adverse event to a Legendary product or customer.</u>**

The "poisoning the well" theory fails for the same reason. Every adverse event in the Complaint comes from an anonymous post about a product from "unregulated sources." Compl. ¶¶ 39–41 & nn.17–18. Lilly does not allege that any of those posts mentions Legendary, nor that any Legendary customer consumed retatrutide and suffered an adverse event. Lilly argues instead that consumers are "blaming the molecule, and turning away from retatrutide for good." Opp. 3. The one post the Complaint reproduces does not bear that out. Its author writes, "I think Reta can get me to my goal," but, because of the side effects, will switch to tirzepatide, Lilly's own

[1] Lilly's investor materials provide context and show why Lilly cannot plausibly plead that tirzepatide and retatrutide compete in the same market. Dan Skovronsky, Lilly's Chief Scientific Officer, explained that "not all patients may need this potentially very high level of efficacy" and that retatrutide likely best suits patients with very high BMI or obesity-related complications requiring substantial weight loss. *Q3 2025 Eli Lilly and Co Earnings Call Transcript*, GuruFocus.com (Oct. 30, 2025), 2025 WLNR 28379949.

molecule. Compl. ¶ 40; *see id.* ¶ 62 n.33 (citing the same post). The posts the Complaint cites blame products "not manufactured in regulated or sterile laboratories" and "bacteria" in products that "aren't made in regulated or sterile labs." *Id.* ¶¶ 40–41. By Lilly's own allegations, then, consumers blame the unregulated source, not the molecule, and bad black-market experiences send them toward approved medicines, as the one reproduced post shows. *Id.* ¶ 40.

The theory also depends on events that have not happened. Lilly "has not finished its clinical trials or submitted a final data package to FDA," Compl. ¶ 4, and it describes an injury that will be complete only "[b]y the time Lilly brings its FDA-approved retatrutide medicine to market," *id.* ¶ 7; *see id.* ¶ 63. The Opposition instead cites a September 29, 2026, press release about a submission Lilly "plans" for 2027. Opp. 3 n.1. That release is not in the Complaint, and a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*, 744 F. Supp. 3d 676, 694 (E.D. Tex. 2024) (Truncale, J.) (quoting *Energy Coal S.P.A. v. CITGO Petroleum Corp.*, 836 F.3d 457, 462 n.4 (5th Cir. 2016)). Nor does the Opposition respond to the Motion's point that imminence is "stretched beyond the breaking point" when the alleged injury will occur "at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2; *see* Mot. 13.

Lilly's "intent and preparedness" cases, Opp. 17–18, ask whether a would-be entrant was injured when the defendant's conduct kept it out of a market. *See Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 806–08 (D.C. Cir. 2001). Lilly does not allege that Legendary is keeping it out of any market. And *Upjohn* enjoined, on a preliminary-injunction record, a competitor's deceptive promotion of the same molecule, which referred to Upjohn's pending product. *Upjohn Co. v. Riahom Corp.*, 641 F. Supp. 1209, 1215–17, 1223–25 & nn.17–18 (D. Del. 1986).

**3. <u>Lilly ties no reputational harm to Legendary.</u>**

The reputational theory fails for the same lack of traceability. It rests on the conjecture that "*if* consumers experience adverse effects from Legendary Peptides' illegal products, they are likely

to attribute those harms to retatrutide or to Lilly." Compl. ¶ 64 (emphasis added). Lilly disclaims reliance on "consumers confusing sellers with Lilly," Opp. 22, and no alleged Legendary statement mentions Lilly, Compl. ¶¶ 44–51. *Cf. Empower*, 2026 WL 1162765, at *7 (finding no proximate cause for reputational harm where "Lilly does not allege that its name is on any of Empower's products or mentioned in any of Empower's allegedly false advertisements").

Lilly's reputational-injury cases involved the plaintiff's own product or conduct. In *Mochi*, studies showing more adverse effects from compounded GLP-1 drugs, and research showing consumers conflate them with approved drugs, supported an inference that the public would see Lilly's medicines as similarly risky. 2026 WL 1076831, at *4. In *Axtell*, the complaint alleged that "semaglutide is synonymous with Novo Nordisk." 2026 WL 1684178, at *3 (citation omitted). In *Meese*, the plaintiff himself would have exhibited the films bearing the challenged label. *Meese v. Keene*, 481 U.S. 465, 473–74 (1987). Lilly alleges no comparable link: it sells no retatrutide, Compl. ¶¶ 4, 32, and nothing Legendary sells or says bears Lilly's name or the name of any molecule Lilly markets, *id.* ¶¶ 44–51.

Lilly also says Legendary's conduct "forced Lilly to expend further resources to rehabilitate its reputation." Opp. 16 (citing Compl. ¶¶ 38, 63). The Complaint says only that Lilly "will" be forced to do so after approval, Compl. ¶ 63, and the Lilly warning it describes concerns the black market generally, not Legendary, *id.* ¶ 38. Nor does *Innova*, Opp. 22, excuse the missing link. It permits pleading on information and belief where the facts are "peculiarly within the possession and control of the defendant" or the belief "is based on factual information that makes the inference of culpability plausible." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (citation omitted). How consumers react to adverse events is not in Legendary's possession. By Lilly's account, consumers share their experiences "on Reddit, on social media, and in personal networks." Compl. ¶ 63. Lilly combed those sources before filing, *id.* ¶¶ 39–41, 46–50, 60, and pleads no adverse event, complaint, or attribution involving a Legendary product. The only Legendary customers it quotes report no adverse event at all. *Id.* ¶¶ 49–50.

Finally, even a well-pleaded risk of future harm would not support damages. Lilly invokes *TransUnion* for the principle that a "material risk of future harm can satisfy the concrete-harm requirement." Opp. 22 (quoting 594 U.S. at 435). *TransUnion* recognized that principle for "forward-looking, injunctive relief," and held that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." 594 U.S. at 435–36. Lilly's future-harm theories cannot support the damages and disgorgement it seeks. Compl., Prayer for Relief ¶ 4.

**B. Lilly does not plead a loss proximately caused by Legendary.**

Lilly answers the Motion's statutory-standing argument with one phrase: diversion of sales "to a direct competitor" is "the paradigmatic direct injury." Opp. 10 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014)). *Lexmark* said that of injury "from false advertising," 572 U.S. at 138, which Lilly does not allege, and it asks "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits," *id.* at 133. The statutes Lilly invokes ask the same question. Mot. 14–16; *see, e.g.*, *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 121–23, 133 (Conn. 2001) (applying the federal direct-injury rule to the Connecticut statute).

Lilly's theory fails that test for the reason the Supreme Court gave in *Anza*, which the Opposition does not address. There, a competitor alleged that the defendant failed to charge sales tax and used the savings to undercut prices and take its customers. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–58 (2006). The Court held that "[t]he direct victim of this conduct was the State," and that the competitor's lost sales flowed from "a set of actions (offering lower prices) entirely distinct from the alleged . . . violation." *Id.* at 458. So too here. The violation Lilly pleads is the sale of an unapproved drug, and those it directly injures are, by Lilly's account, consumers who receive products "of unknown safety, purity, potency, and efficacy." Compl. ¶ 59. What Lilly says draws consumers from its medicines is something else: "lower cost and perceived superior efficacy," *id.* ¶ 60—claims the Complaint attributes to other sellers and Reddit users, not Legendary, *id.* ¶¶ 37 n.14, 60 nn.31–32. Lilly would lose those sales to any cheaper product said

to work better, approved or not. Thus, the illegality Lilly sues over is not what causes the lost sale. "Businesses lose and gain customers for many reasons," *Anza*, 547 U.S. at 459, and a plaintiff "cannot piggyback on injuries suffered by others," *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992).

The adverse-event theories are more remote still. Lilly pleads that consumers are "directly harmed" by an adverse event, Compl. ¶ 63—each is "a current injury to the consumer," *id.* ¶ 62—and that Lilly is harmed only if they then blame the molecule and deter others, *id.* ¶¶ 62–64. That harm is "purely derivative of 'misfortunes visited upon a third person by the defendant's acts,'" *Lexmark*, 572 U.S. at 133 (citation omitted), and is too remote even if foreseeable. *See Ganim*, 780 A.2d at 123–26; *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 849–51 (6th Cir. 2003).

Lilly's goodwill theories fare no better. An ascertainable loss must be "capable of being discovered, observed or established," *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981) (citation omitted); *see* Opp. 16, and that requirement "does not displace the remoteness doctrine," *Ganim*, 780 A.2d at 133. A loss that arrives only "[b]y the time Lilly brings its FDA-approved retatrutide product to market," Compl. ¶ 63, cannot be established now; Lilly has suffered "only the threat of future damage," which is not an ascertainable loss. *Jones v. Westbrook*, 379 P.3d 963, 970 (Alaska 2016). Washington likewise requires that "the injury must be an economic loss." *Montes v. SPARC Grp. LLC*, 586 P.3d 999, 1005 (Wash. 2026); *see* Opp. 20 n.3. Lilly has not pleaded an economic loss caused by Legendary under any of the seven statutes, and Counts 1–6 and 8 should be dismissed.

**C. <u>Texas does not recognize Lilly's common-law claim.</u>**

Two Southern District of Texas courts have dismissed the claim Lilly asserts here. *Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708, 723–29 (S.D. Tex. 2025); *Empower*, 2026 WL 1162765, at *12–14. The Opposition ignores *Empower*, which found *Revive* "persuasive" and dismissed Lilly's "virtually identical" claim. *Empower*, 2026 WL 1162765, at *14. Lilly relies instead on an unreasoned one-page order denying a motion to dismiss. Opp. 24; Order, *Eli Lilly &*

*Co. v. AP Max Inc. d/b/a Southend Pharmacy*, No. 4:25-cv-05051 (S.D. Tex. Apr. 17, 2026), ECF No. 47. Twelve days later, *Empower* followed *Revive*. Lilly's argument that *Revive* confused negligence per se with unfair competition, Opp. 24–25, fails on Lilly's own authority. *Reliable Ambulance*, Opp. 25, asked, as *Revive* did, whether "recognizing such an accompanying civil action would be inconsistent with legislative intent." *Reliable Ambulance Serv., Inc. v. Mercy Hosp. of Laredo*, No. 04-02-00188-CV, 2003 WL 21972724, at *3 (Tex. App.—San Antonio Aug. 20, 2003, pet. denied) (mem. op.) (quoting *Reeder v. Daniel*, 61 S.W.3d 359, 362 (Tex. 2001)). Far from treating statutory violations as presumptive predicates, Opp. 25, *Reliable* rejected an unfair-competition claim built solely on a federal criminal statute. *Reliable*, 2003 WL 21972724, at *2–6. *Revive* applied the same test to the Texas Food, Drug, and Cosmetic Act, which is enforced by public officials through "a sliding scale of remedies." 812 F. Supp. 3d at 726–27. Lilly's remaining authorities, all of which *Revive* considered, *id.* at 723–24, show only that *some* statutes, "including criminal statutes," can be unfair-competition predicates, Opp. 25—not that Texas' FDCA can, Mot. 20. Count 7 should be dismissed with prejudice.

## III. CONCLUSION

The Court should dismiss the Complaint under Rule 12(b)(1) for lack of Article III standing or, alternatively, dismiss all eight counts with prejudice under Rule 12(b)(6).

Dated: November 23, 2026

/s/ *Matthew Venezia*
Matthew Venezia (*pro hac vice*)
CA Bar No. 313812
WATSTEIN TEREPKA LLP
999 N. Pacific Coast Highway, Suite 525
El Segundo, California 90245
Telephone: (213) 753-1337
Facsimile: (404) 537-1650
mvenezia@wtlaw.com

Heeth Varnedoe (*pro hac vice*)
WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 905-8075
Facsimile: (404) 537-1650
hvarnedoe@wtlaw.com

*Counsel for Defendant*
*Legendary Peptides, LLC*

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, which will serve all counsel of record who have consented to electronic service.

/s/ *Matthew Venezia*________

Matthew Venezia